BENTON WILSON, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 52894. Promulgated December 5, 1935.

*Maxwell M. Mahany, Esq.*, and *George H. Abbott, C. P. A.*, for the petitioner.

*W. R. Lansford, Esq.*, for the respondent.

OPINION.

TRAMMELL: This proceeding is for the redetermination of a deficiency in income tax of $7,303.20 for 1928. The principal issue presented by the pleadings is whether the respondent erred in including in the taxable income of the petitioner any part of an

amount of $113,169.43 representing oil and gas royalties, bonus from the granting of leases and interest on bonds and bank deposits impounded in the hands of a Federal court receiver during the period 1915 down to the early part of 1928, which amount, less receiver's expenses of $17,648.95 or a net of $95,520.48, was distributed to the petitioner by the receiver in the early part of 1928. Certain alternative issues relating to the respondent's allowance of deductions for depletion and receiver's expenses are contingently presented dependent upon our determination of the principal issue.

The proceeding was submitted upon an agreed statement of facts, which is incorporated herein by reference, and upon certain documentary evidence. Pertinent portions of the agreed statement of facts are as follows:

The petitioner is an individual white citizen of no Indian blood. Pursuant to authority contained in the Original and Supplemental Creek Agreements or Treaties of May 25, 1901, and August 8, 1902, entered into between the United States and the Creek Indian Nation, the petitioner on November 29, 1912, in consideration of a cash purchase payment received title by Deed from the Creek Indian Tribe to Lot 9, Sec. 17, Twp. 18 No., R. 7 E. such land being located in Creek County, Oklahoma, and which land borders on the Cimarron River. At all times from date of acquisition up to and including the year 1928, this land was continuously owned by the petitioner.

During the years 1912 and 1913 the Commissioner of the Land Office of the State of Oklahoma, proceeding upon the assumption that the Cimarron River was navigable and that the bed thereof belonged to the State of Oklahoma, granted various oil and gas leases upon "the bed of the Cimarron River below highwater mark." * * *

Such leases included the bed of the Cimarron River bordering on the upland belonging to the petitioner theretofore purchased as above stated. Development of these leases was immediately begun by the lessees, oil and gas being secured in large quantities by the original lessees or their assignees.

On December 27, 1913 * * * the United States, "claiming title and right of possession to be in its ward, the Creek Nation of Indians", as guardian and trustee of the tribal property, filed an action * * * in the District Court of the United States for the Eastern District of Oklahoma, contending that (a) these river-bed lands were still the property of the Creek Nation, not having been included in the individual allotments or conveyances, and (b) that the Cimarron River was a non-navigable stream and that the State of Oklahoma, and the lessees claiming under the State, had no valid or legally enforceable right to extract oil therefrom. On the same date, December 27, 1913, the State of Oklahoma intervened in this action by the United States against the lessees.

Recognizing the desirability of proceeding with the development of the river-bed lands before the oil, through adjacent development, might be drained therefrom, and in order to secure "protection of whomsoever may ultimately be decreed by the Court to be the owner of" the river-bed lands, the United States and the State of Oklahoma entered into a stipulation dated and filed December 27, 1913, pursuant to which the lessees of the Oklahoma Land Office were to continue to operate the wells, the lessees to retain the working interest oil and gas as produced. The stipulation also provided for two agencies, (a) a Supervisory Committee, whose duty it was in substance to supervise in a

very general way the development of the leases, and (b) a Receiver whose duties included the collection of all royalties, bonuses and rentals on the river-bed leases, and to preserve them "subject to be disbursed only under an order of court to whomsoever may ultimately be adjudged the owner of said lands and entitled thereto."

By Court order dated December 30, 1913, the Court appointed the Committee and the Receiver, one member of the Committee being selected by the United States and one by the State of Oklahoma. By order of July 22, 1915, the Supervisory Committee was superseded by a so-called "Advisory Committee" of two members, the duties of the "Supervisory Committee" being thereafter delegated in substance to the Receiver. That is, the Receiver was given complete charge of the river-bed land leases and the development of the river-bed lands for oil and gas purposes. * * *

Production proceeded; the stipulated royalties and bonuses were paid to the Receiver and he held same subject to the orders of the Court.

From time to time the owners of land abutting on the Cimarron river-bed, including this petitioner, intervened in the Federal District Court action, claiming title to the river-bed under their original conveyances from the Creek Nation, whether through allotment or purchase, and asserted their ownership of all royalties accruing from the leases theretofore executed and still being operated under the leases granted by the Oklahoma Land Office.

Following the decision in *Brewer E. O. & G. Co.* v. *U. S.*, 260 U. S. 77, 43 S. Ct. 60, filed November 13, 1922, holding non-navigable the Cimarron River, the State of Oklahoma on January 29, 1923, filed a stipulation authorizing a decree against it as to title. Thereafter ownership of the river-bed lands was claimed on the one side by the United States on behalf of the Creek Indian Nation, and on the other by the individual allottees or owners of abutting land, including the petitioner.

On January 29, 1923, the river-bed case was referred by the Court to a "Master" to make findings as to facts, law, and amounts theretofore impounded, his report being filed on May 21, 1924.

On January 31, 1925, the Court issued its order confirming the Master's report: in substance finding the title to the river-bed lands to be in the individual allottees or owners of abutting lands, and that such individual owners were entitled to the funds then impounded with the Receiver. Appeal from this order was taken by the United States on March 5, 1925, and on May 27, 1927, the U. S. Circuit Court of Appeals, 8th Circuit, affirmed the lower Court's order as to title. (*U. S.* v. *Hayes, et al.*, 20 F 2d 873; see also *Rector* v. *U. S.*, 20 F 2d 845.) Certiorari was applied for by the United States but writ therefor was denied in November, 1927, 275 U. S. 555.

* * * * * * *

During all of the period from date of appointment on December 30, 1913, to date of distribution of impounded funds in 1928, the Receiver originally appointed or his subsequently appointed successors, continued to collect and hold all royalties, bonuses and rentals derived from the river-bed lands. During this period he invested considerable amounts in U. S. Liberty Bonds from which he derived interest, and also received interest from daily bank balances.

As a condition to the distribution of the funds in 1928 to the petitioner and others entitled thereto, the Court required acquiescence by the Distributees in proportional contributions to the receiver's expenses and salary.

On February 2, 1928, the Federal District Court to whom the Receiver was accountable issued its order directing the Collector of Internal Revenue at Oklahoma City, Oklahoma, to appear and file an intervening petition asserting "all claims or demands * * * against the money in the hands of the

receivers * * * arising from all oil royalties, rentals and bonuses produced from the Cimarron river-bed lands * * * for * * * income taxes, or other claims or demands of any kind or nature * * * and if no such claims or demands shall be filed within 10 days from date of service of this order * * * all such claims and demands shall thereafter be barred and precluded."

The Order of February 2, 1928, was duly served on February 7, 1928, upon Acel C. Alexander, then Collector of Internal Revenue at Oklahoma City, Oklahoma, service being effected by the U. S. Marshal "by handing a true and correct copy" of the order to the said Alexander. On February 20, 1928, a 30 days' extension was granted to the Collector of Internal Revenue, extending the time for intervention and filing of claims for taxes due to March 15, 1928. The Collector of Internal Revenue did not make any demands whatsoever upon the Receiver for taxes on account of the impounded funds.

Early in the year 1928 the Receivers distributed to the petitioner the proceeds of oil and gas royalties and bonus, and interest earned during the period, less Receiver's expenses, as follows:

(a) Oil and Gas Royalties Produced:

| | |
|---|---:|
| From beginning of production in 1915 to date of District Court decision on January 31, 1925 | $65, 817. 90 |
| From 1–31–25 to close of year preceding the taxable year | 13, 670. 18 |
| From 1–1–1928 to termination of receivership in 1928 | 461. 44 |
| | 79, 949. 52 |
| (b) Bonus from Granting Leases | 3, 410. 26 |
| (c) Liberty Loan Bond Interest | 17, 691. 94 |
| (d) Interest in Daily Bank Balances | 12, 117. 71 |
| Total Funds Impounded | 113, 169. 43 |
| (e) *Less:* Receiver's expenses deducted by Receiver prior to distribution | $17, 648. 95 |
| Net amount Distributed by Receiver in 1928 | $95, 520. 48 |

The petitioner makes no claim to any exemption from income tax because of the status of this land as having formerly belonged to the Creek Indian Nation or on account of the circumstance that title originated through conveyance by Creek Tribal deed. The petitioner has made his income tax returns, including that for the year 1928, upon the cash receipts and disbursements basis.

In determining the deficiency here involved the respondent increased the petitioner's gross income by the amount of the total impounded funds, $113,169.43, as shown above. In determining taxable net income he allowed as deductions the amounts of $17,648.95 representing receiver's expenses and $21,986.12 representing depletion ($27\frac{1}{2}$ percent of $79,949.52, the amount of oil and gas royalties impounded in the hands of the receiver from the beginning of production in 1915 to the termination of the receivership in 1928). No depletion, however, was allowed with respect to the bonus from the granting of leases in the amount of $3,410.26.

The petitioner contends that the funds impounded in the hands of the receiver during the period of the receivership were income

accumulated in trust for unascertained persons; that the receiver was a fiduciary within the meaning of that term as used in the applicable revenue acts; that as such he (the receiver) should have filed an annual return of the income which came into his hands and paid the tax thereon; and that accordingly when the income here in controversy was distributed to petitioner it was not taxable to him. The respondent contends that the portions of the applicable acts relating to the taxing of income for unascertained persons have no application here, since the identity of the interested parties was known and ascertained from the outset of the litigation. He urges that under these circumstances the receiver was not required to file returns with respect to the income coming into his hands and therefore the income distributed to the petitioner upon the termination of the receivership in 1928 was taxable to petitioner in that year.

The suit begun in December 1913 was to determine whether the river bed lands were the property of the Creek Indian Nation or of the State of Oklahoma. After January 29, 1923, when the State of Oklahoma consented to take judgment against it as to title, the suit was to determine whether the lands were the property of the Creek Indian Nation or of the individual owners of the abutting upland, of which petitioner was one. As we view the situation the suit was always one to try title, or, in other words, for the purpose of determining the ownership of the property as between ascertained, known, and identified parties. It was not a suit to ascertain or determine the identity of some person or persons whose identity was not known or had not been ascertained. At no time did it involve a determination of the question as to who the Creek Nation was, or who the State of Oklahoma was or who the individual owners of the abutting upland were. These parties were already known and identified. The suit was to determine which of these known and identified parties was the owner of the title to the property. See discussion in *R. S. Goforth*, 32 B. T. A. 1206, and *Commissioner* v. *Owens*, 78 Fed. (2d) 786, affirming in part *O. O. Owens*, 26 B. T. A. 1147, as to the distinction between the terms " ascertained persons " and " unascertained persons." Since the litigation did not involve unascertained persons, the receiver in whose hands the royalties, bonuses, and rentals were impounded was not a receiver for unascertained persons and the portions of the applicable acts relating to receivers for that class of persons are not applicable to the question presented here.

The Act of 1913 (Sec. II) provides as follows:

D. The said tax shall be computed upon the remainder of said net income of each person subject thereto, accruing during each preceding calendar year ending December thirty-first: * * *. On or before the first day of March, nineteen hundred and fourteen, and the first day of March in each year

thereafter, a true and accurate return, under oath or affirmation, shall be made by each person of lawful age, except as hereinafter provided, subject to the tax imposed by this section, and having a net income of $3,000 or over for the taxable year * * *; guardians, trustees, executors, administrators, agents, receivers, conservators, and all persons, * * * or associations acting in any fiduciary capacity, shall make and render a return of the net income of the person for whom they act, subject to this tax, coming into their custody or control and management, and be subject to all the provisions of this section which apply to individuals; * * * and also all persons, * * * or associations, * * * in whatever capacity acting, having the control, receipt, disposal, or payment of fixed or determinable annual or periodical gains, profits, and income of another person subject to tax, shall in behalf of such person deduct and withhold from the payment an amount equivalent to the normal income tax upon the same and make and render a return, as aforesaid, but separate and distinct, of the portion of the income of each person from which the normal tax has been thus withheld, and containing also the name and address of such person or stating that the name and address or the address, as the case may be, are unknown: * * * *Provided further*, that in either case above mentioned no return of income not exceeding $3,000 shall be required: * * *. Any person for whom return has been made and the tax paid, or to be paid as aforesaid, shall not be required to make a return unless such person has other net income, but only one deduction of $3,000 shall be made in the case of any such person.

\*           \*           \*           \*           \*           \*

E. All persons, * * * in whatever capacity acting, including * * * trustees acting in any trust capacity, * * * receivers * * * having the control, receipt, custody, disposal, or payment of interest, rent, salaries, wages, premiums, annuities, compensation, remuneration, emoluments, or other fixed or determinable annual gains, profits, and income of another person, exceeding $3,000 for any taxable year, other than dividends on capital stock, or from the net earnings of corporations and joint-stock companies or associations subject to like tax, who are required to make and render a return in behalf of another, as provided herein, * * * are hereby authorized and required to deduct and withhold from such annual gains, profits, and income such sum as will be sufficient to pay the normal tax imposed thereon by this section, and shall pay to the officer of the United States Government authorized to receive the same; and they are each hereby made personally liable for such tax. * * *

\*           \*           \*           \*           \*           \*           \*

The tax herein imposed upon annual gains, profits, and income not falling under the foregoing and not returned and paid by virtue of the foregoing shall be assessed by personal return under rules and regulations to be prescribed by the Commissioner of Internal Revenue and approved by the Secretary of the Treasury.

## Regulations 33, relating to the Act of 1913, provide as follows:

ART. 71. Fiduciaries shall, on or before March 1 of each year, make and render a return of the income coming into their custody or control and management from each trust or estate when the annual interest of any beneficiary in said trust or estate is in excess of $3,000. This return (Form 1041) must be filed with the collector for the district in which the fiduciary resides or has his principal place of business, and shall contain an itemized statement of the gross income and deductions claimed.

\*           \*           \*           \*           \*           \*           \*

When the share of any beneficiary, therefore, in the amount stated on line 3 of the first page of said return is in excess of $3,000, return must be made.

ART. 72. As each such fiduciary acts solely in behalf of the beneficiaries of the trust, the annual return required in such cases has reference only to the income accruing and payable through said fiduciary, and not to the income of the beneficiary derived from other sources. If, however, such fiduciary is legally authorized to act for such beneficiary as agent or attorney in fact, he may in such case also make for the beneficiary the personal annual return (Form 1040) required by law.

ART. 74. Fiduciaries having control of any portion of an annual income accruing during the year, but not distributed or paid to the beneficiaries during the year, shall, in rendering their annual return (Form 1041), give the name and address of each of said beneficiaries having a distributive interest in said income, and shall furnish all information called for in such returns. The fiduciary shall in all such cases withhold and pay to the collector, as provided by law, the normal tax of 1 per cent upon the distributive interest of each of said beneficiaries when in excess of $3,000, the same as if said income was actually distributed and paid. * * *

ART. 75. When the normal tax on undivided annual net income has been so withheld, such tax shall not be again withheld when such portion of the income is actually distributed and paid to said beneficiary.

In *Smietanka* v. *First Trust & Savings Bank*, 257 U. S. 602, the Supreme Court, after quoting certain of the above quoted provisions of the Act of 1913 and summarizing certain other provisions of the act, stated:

It is obvious from a reading of the statute, the relevant provisions of which we have summarized, that Congress was seeking to require fiduciaries to make return and pay the normal tax due from persons subject to the tax on such income as the fiduciaries were receiving for such persons. There was nowhere in the act a payment required of the fiduciary of a tax upon the income of the estate or trust property, the income from which he collects, except as it is to inure to the benefit of a person or an individual from whose income he is authorized and required to deduct the normal tax thereon. There must have been a taxable person for whom the fiduciary was acting to make the provisions relied upon by the government applicable. There was no provision for the payment " at the source " by the fiduciary of anything but the normal tax. It was intended that the additional or surtax should be paid by the cestui que trust. * * *

* * * There was indicated in the taxing paragraph A the congressional intention to tax citizens everywhere, and noncitizens, resident in the United States, including persons, natural and corporate, on income from every source less allowed deductions.

From the foregoing it is clear that, although fiduciaries including receivers were not taxable persons under the act, nevertheless they were required to make a return for and pay the normal tax due from persons subject to the tax on such income as the fiduciaries were receiving for such persons. The act contemplated the payment of surtax by the *cestui que trust*. Under paragraph D any person for whom a return had been made and the tax paid as provided in that

paragraph was not required to make a return unless he had other net income. In event he had other net income paragraph E provided for the filing of a return by him upon which the tax due on such income would be assessed. In this situation only one personal exemption of $3,000 was allowable with respect to the income reportable by the fiduciary and that reportable by the individual. We find nothing in the act or in the respondent's regulations relating thereto that relieved the fiduciary of the duty imposed on him of filing a return and paying the normal tax with respect to the income coming into his hands in event he was in possession of a part only of the property of the *cestui que trust*. His duty and obligation with respect to income coming into his hands for the *cestui que trust* were the same as if the *cestui que trust* had no other property or income. So far as the normal tax was concerned, the receiver was required to file a return of and pay the tax on the income received by him from property belonging to the petitioner.

Under the 1913 Act surtax was imposed only on net incomes in excess of $20,000. According to the agreed statement of facts submitted by the parties, production began in 1915 on the petitioner's river bed lands and that year therefore was the only one governed by the Act of 1913. Whether the amount received by the receiver in 1915 was more or less than $20,000 is not indicated by the agreed statement of facts, since the parties have not stipulated the amounts separately for each year, but only the totals for specified periods of years. In the petitioner's original petition there is a segregation by years of the stipulated totals of oil and gas royalties and the bonuses from the granting of leases. The total there shown as having been received by the receiver from oil and gas royalties and from bonuses is $10,531.95. Since Liberty bonds had not been issued during that year, the only other income received by the receiver with respect to petitioner's property was interest on daily bank balances. Under the circumstances of the case this item could not have been very great and certainly when combined with income from royalties and bonuses was less by far than $20,000, the amount beyond which surtax was applicable.

Since for the year 1915 the receiver was required to make return of and pay the normal tax on the income received by him from the property of the petitioner in his hands, and there being nothing in the record to indicate that such income was subject to surtax, we are unable to find that the income received by the receiver for this year was taxable again when it was paid over to the petitioner in 1928. *Elnora C. Haag*, 19 B. T. A. 982; *Commissioner* v. *Owens, supra.*

The Revenue Act of 1916 provides as follows:

Sec. 2. (b) Income received by estates of deceased persons during the period of administration or settlement of the estate, shall be subject to the normal

and additional tax and taxed to their estates, and also such income of * * * any kind of property held in trust, including such income * * * held for future distribution under the terms of the * * * trust shall be likewise taxed, the tax in each instance, except when the income is returned for the purpose of the tax by the beneficiary to be assessed to the executor, administrator, or trustee, as the case may be: *Provided,* that where the income is to be distributed annually or regularly between existing heirs or legatees, or beneficiaries the rate of tax and method of computing the same shall be based in each case upon the amount of the individual share to be distributed.

Such trustees, executors, administrators, and other fiduciaries are hereby indemnified against the claims or demands of every beneficiary for all payments of taxes which they shall be required to make under the provisions of this title, and they shall have credit for the amount of such payments against the beneficiary or principal in any accounting which they make as such trustees or other fiduciaries. * * *

SEC. 8. (c) Guardians, trustees, executors, administrators, receivers, conservators, and all persons, * * * or associations acting in any fiduciary capacity, shall make and render a return of the income of the person, trust, or estate for whom or which they act, and be subject to all the provisions of this title which apply to individuals. Such fiduciary shall make oath that he has sufficient knowledge of the affairs of such person, trust, or estate to enable him to make such return and that the same is, to the best of his knowledge and belief, true and correct, and be subject to all the provisions of this title which apply to individuals.

While section 8 (c) of the Act of 1916 was amended in certain particulars by section 1204 (1) of the Act of 1917, no change was made in the provisions set forth above and they were reenacted as they appeared in the 1916 Act. A further provision was added to the effect that "no return of income not exceeding $3,000 shall be required except as in this title otherwise provided."

Regulations 33 (revised), relating to the Acts of 1916 and 1917, provide as follows:

ART. 26, par. 181. Receivers who, as officers of a court, stand in the stead of some principal are required to account for income tax as the principal would have been required to account.

ART. 29, par. 207. Income accumulated in trust for unascertained persons or persons with contingent interests is held to be income accruing to the estate and is taxable to the estate.

Income held for future distribution under the terms of the will or trust shall be likewise taxed except when returned by the beneficiary for the purpose of the tax.

* * * * * * *

* * * The beneficiary will be required in the case of trust estates to account for the actual amounts distributed or credited to him.

As was held in *Merchants' Loan & Trust Co.* v. *Smietanka,* 255 U. S. 509, and restated in *Smietanka* v. *First Trust & Savings Bank, supra,* Congress by the Act of 1917 made trustees taxable persons and required them to render a return of income for the person, trust or estate for whom or which they acted. This constituted a change

from the Act of 1913, which did not make fiduciaries taxable persons, but required them nevertheless to make a return for and pay the normal tax due from persons subject to the tax on such income as the fiduciaries received for such persons. Article 26 of the respondent's Regulations 33 (Revised), relating to the Acts of 1916 and 1917, provides that receivers are required to account for income tax as the principal would have been required to account. Article 29 provides that income held for future distribution under a trust is held to be income accruing to the trust and is taxable to the trust except when returned by the beneficiary for the purpose of the tax. The article further provides that the beneficiary will be required in the case of trust estates to account for the actual amounts distributed or credited to him.

In the light of the provisions of the Acts of 1916 and 1917, of the Supreme Court's construction of them and of the requirements of the respondent's regulations, we think it is to be concluded that a receiver situated as was the receiver in the instant case was required to file returns of income and pay tax on the income coming into his hands from the property held by him as a receiver. Here no income received by the trustee appears to have been credited or paid to the petitioner during the years 1916 or 1917 and therefore petitioner was not required in those years to make return or pay tax on any amounts coming into the hands of the receiver. We therefore hold that the income received by the receiver for 1916 and 1917 was taxable to him and not to the petitioner and that it is not taxable again when it was paid over to the petitioner in 1928.

The respondent urges that the decision in *North American Oil Consolidated* v. *Burnet*, 286 U. S. 417, is determinative of the controversy here. That case arose under section 13 (c) of the Revenue Act of 1916, which section appears in the portion of the act dealing with corporations. Under section 13 (c) receivers " operating the property or business of corporations " were required to " make returns of net income as and for such corporations * * * in the same manner and form as such organizations * * * and any income tax due " was to be " assessed and collected in the same manner as if assessed directly against the organization of whose business or properties they have custody and control." The taxpayer corporation in that case contended that certain income received in 1916 by a receiver appointed for a part of its property and paid over to the taxpayer in 1917 was under the Act of 1916 taxable to the receiver for 1916 and not again subject to tax when received by the taxpayer in 1917. In denying the taxpayer's contention and holding that the income was taxable to the corporation in 1917 the Court held that the language of section 13 (c) of the Act of 1916

contemplated a substitution of the receiver for the corporation and that there could be such substitution only when the receiver was in charge of the entire property and business of the corporation. The Court pointed out that there was no provision in the act for the consolidation of the return of a receiver of part of a corporation's property or business with the return of the corporation itself and that it is not to be assumed that Congress intended to require the filing of two separate returns for the same year as covering only a part of the corporate income, without making provision for consolidation so that the tax could be based upon the income as a whole. The Court stated that the regulations of the Treasury Department (arts. 26 and 209, Regulations 33) had construed the statute as applying only to receivers in charge of the entire property of a corporation and that in all other cases required the corporations themselves to report their income. The Court further stated that such construction was correct. Article 26 of Regulations 33, so far as it relates to receivers, is set out above. Article 209 reads as follows:

*Receivers to make returns.*—Section 13, paragraph C, of this title requires receivers, trustees in bankruptcy, or assignees who are in charge of and are operating the property and business of corporations, to make returns of annual net income and pay any income tax thereby shown to be due, regardless of what disposition, subject to the orders of the court, may be made of such income.

Notwithstanding the fact that the powers and functions of the corporation are suspended and that the property and business are for the time in control and custody of the receiver, trustee, or assignee, subject to the orders of the court, such receiver, trustee, or assignee stands in the place of the corporate officers and is required for the purpose of this title to perform all the duties and assume all the liabilities which would devolve upon the officers of the corporation were they in control. The income which he receives on account of the business transacted is the income of the corporation and, no matter how such income is applied, it is subject to the tax imposed by this title in so far as it exceeds the deductions or allowances authorized by law.

The receiver, trustee, or assignee acting for the corporation, is required to make a true and accurate return of annual net income covering each year or part of each year during which he is in custody and control of the business or properties and will be liable to all the penalties imposed by this title for failure to meet any of its requirements.

The Supreme Court also pointed out that in section 239 of the Act of 1918, relating to receivers for corporations, Congress had adopted the same phraseology as was used by it in section 13 (c) of the Act of 1916.

We do not construe the decision in *North American Oil Consolidated* v. *Burnet, supra,* as being controlling here. That case and the instant case are governed by different provisions of the act, the *North American Oil Consolidated* case being governed by the provisions of section 13 (c) specifically relating to receivers for corpora-

tions, and the instant case being controlled by the sections relating to receivers and other fiduciaries for individuals. Section 13 (c) provides for the receiver for a corporation making a return " as and for the " corporation for which he acted and for the assessment and collection of the tax " in the same manner as if assessed directly against " the corporation. Under that section the receiver was substituted for the corporation. As heretofore indicated, the provisions relating to receivers and other fiduciaries for individuals (secs. 2 (b) and 8 (c) of the Act of 1916, sec. 1204 (1) of the Act of 1917) made them taxable persons and required them as such to file a return and pay any tax due on income coming into their hands and held for future distribution except where the income was returned by the beneficiary. Under the respondent's regulations the beneficiary was required to make return of and pay tax on only the amounts of such income that were actually distributed or credited to him. We think that Congress, in sections 2 (b) and 8 (c) of the Revenue Act of 1916 and section 1204 (1) of the Act of 1917, expressed an intention to tax to the fiduciary income coming into his hands and held for future distribution, and we think the respondent's regulations relating to these sections of the acts contemplate the same. The portions of the 1913 Act relating to receivers had application only to receivers for individuals. It was not until the Act of 1916 that provision was made for the filing of returns and the payment of tax by receivers for corporations. *Scott* v. *Western Pac. R. Co.*, 246 Fed. 545; *United States* v. *Chicago & E. I. Ry. Co.*, 298 Fed. 779.

While the phraseology of section 13 (c) of the Revenue Act of 1916 relating to receivers for corporations filing returns was adopted in section 239 of the 1918 Act without substantial change, we find in section 225 of the Act of 1918 for the first time in any of the revenue acts a provision specifically excepting receivers in possession of part only of the property of an individual from filing returns. This provision reads as follows: " That every fiduciary (except receivers appointed by authority of law in possession of part only of the property of an individual) shall make under oath a return for the individual, estate or trust for which he acts * * *." Respecting this provision of the act, Regulations 45 provide as follows:

ART. 424. *Returns by receivers.*—A receiver who stands in the stead of an individual or corporation must render a return of income and pay the tax for his trust, but a receiver of only part of the property of an individual or corporation need not. * * * When acting for a corporation a receiver is not treated as a fiduciary, and in such a case the return shall be made as if by the corporation itself. See section 239 of the statute and article 622. * * *. A receiver of the rents and profits appointed to hold and operate a mortgaged parcel of real estate, but not in control of all the property or business of the mortgagor, and a receiver in partition proceedings, are not

required to render returns of income. In general, statutory receivers and common law receivers of all the property or business of an individual or corporation must make returns.

The legislative history of section 225 of the 1918 Act does not disclose the reason for the insertion of the exception there made with respect to the filing of returns by receivers in possession of part only of the property of an individual. None of the prior acts contained this provision, but all the acts subsequent to 1918 throughout the period in controversy (sec. 225 of the Acts of 1921, 1924, and 1926, and section 145 of the Act of 1928) contain the provision. If under the Acts of 1913, 1916, and 1917 receivers in possession of part only of the property of an individual were excepted from filing returns as receivers generally were required to do, we think that Congress in the Act of 1918 and subsequent acts would have adopted the same or substantially the same provisions as it had used in prior acts, as was done with respect to receivers for corporations, where it adopted in the 1918 Act the phraseology used in the 1916 Act. Clearly the provision in section 225 of the Act of 1918 with respect to returns by receivers in possession of a part only of the property of individuals constituted something entirely new and different from what was contained in the prior acts. If the provision was intended as a clarification of what the law was under the prior acts with respect to receivers in possession of a part only of the property of an individual, it would seem that a similar provision would have been inserted in the section relating to receivers for corporations. It is our opinion that Congress intended in the Act of 1918 and subsequent acts to provide differently with respect to returns by receivers in possession of a part only of the property of individuals from what it had provided in the acts prior to that of 1918. The provision in the Act of 1918 constituted a change and not a clarification or interpretation.

Inasmuch as the provisions of the acts beginning with that of 1918 and including that of 1928 specifically excused receivers in possession of a part only of the property of an individual from making returns of the income coming into their hands, the receiver for the property of the petitioner was not required to file a return and pay tax on the income from the property coming into his hands after January 1, 1918, the effective date of the 1918 Act. Such income was taxable to the petitioner in 1928, the year in which it was paid over to him. *Commissioner* v. *Owens, supra, North American Oil Consolidated, supra.*

The fact that immediately prior to distribution of the impounded funds by the receiver in 1928 the collector of internal revenue made no demand upon the receiver for taxes with respect to such funds, although he had been notified to file claim for any taxes due or his

claim would be barred, does not alter the foregoing conclusion. So far as the record discloses the receiver long prior to 1928 might have filed all returns that he was required to file and paid all the tax that was due thereon. In the absence of a contrary showing, it is to be assumed that the receiver returned and paid the tax on all income coming into his hands that was taxable to him. *Commissioner v. Owens, supra.* Likewise we think it may be assumed that the collector's failure to file any claim was due to the fact that no taxes were due and outstanding against the receiver on account of the funds in his hands.

As an alternative issue to be decided in the event we should hold that the respondent's inclusion in the petitioner's gross income of $3,410.26 representing bonus from the granting of leases impounded in the hands of the receiver was proper, the petitioner alleged that the respondent erred in not allowing a deduction for depletion in the amount of $937.82 with respect to such bonus. In his answer the respondent admits the correctness of this allegation of error. In a redetermination of the deficiency the amount therefore will be allowed as a deduction.

In his petition the petitioner raises certain other alternative issues to be considered in event we should hold that no part of the amount received in 1928 was taxable to him in that year. Since we have held that the portion of the amount received in 1928 which came into the hands of the receiver after the beginning of 1918 constituted taxable income to the petitioner, it becomes unnecessary to consider these issues.

Reviewed by the Board.

*Decision will be entered under Rule 50.*

MURDOCK dissents.